IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REUVEN DULITZKI,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| BAE SYSTEMS SHARED SERVICES, INC.,<br>　　　　　Defendant. | NO.  25-2680 |

HODGE, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　January 20, 2026

## MEMORANDUM

Plaintiff Reuven Dulitzki ("Dulitzki" or "Plaintiff") brings this action against his former employer, Defendant BAE Systems Shared Services, Inc. ("Defendant"). The Amended Complaint (the "Complaint") asserts claims for national origin discrimination (Count I) and retaliation for reporting national origin discrimination (Count II) pursuant to 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951 *et seq*. (ECF No. 11.) Before the Court is Defendant's Partial Motion to Dismiss ("Motion") (ECF No. 13) Plaintiff's Section 1981 claims and his retaliation claims. For the reasons that follow, the Court grants the Motion.

**I.　　BACKGROUND**[1]

Plaintiff is an Israeli native of Middle Eastern descent who resides in Wynnewood, Pennsylvania. (ECF No. 11 ¶ 7.) He holds a bachelor's degree in Aerospace Engineering and a master's degree in Information Systems. (*Id.* ¶ 14). In February 2022, Defendant hired Plaintiff to

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

work on automated software testing within Defendant's Information Technology department. (*Id.* ¶¶ 12, 15.)

In late 2023, Sam Motes ("Motes"), a U.S. native, became Plaintiff's direct supervisor. (*Id.* ¶ 17.) Under Motes' supervision, the "extended team" consisted of approximately ten employees, including four employees of the "Test Automation Team" of which Plaintiff was a part. (*Id.* ¶ 18). Plaintiff and Shashi Rawat ("Rawat"), who was born in India, were the only non-U.S. native members of the Test Automation Team; all other members—including Jaclyn Stugart ("Stugart") and Keegan Belongia ("Belongia")—were born in the U.S. (*Id.* ¶ 19.) Plaintiff alleges that Motes was aware of Plaintiff's Israeli national origin based on him inquiring about Plaintiff's family in Israel in the context of the October 7 Hamas attacks. (*Id.* ¶ 21.)

After Motes began managing Plaintiff's team, he stripped Plaintiff of his job duties, including "meeting with key users/managers to coordinate efforts and requirements for test automation, leading team meetings in the absence of Motes, and presenting to large audiences and managers the test automation framework which had been architected by [Plaintiff]." (*Id.* at ¶ 22.) Motes reassigned those job duties to Stugart and Belongia, who Plaintiff contends are less qualified than him. (*Id.* at ¶ 23.) Motes also stripped job duties from Rawat and reassigned them to Stugart. (*Id.* at ¶ 24.)

In March 2024, Plaintiff and Rawat jointly complained to Motes about their duties being stripped and reassigned to Stugart. (*Id.* ¶ 26.) Following the complaint, Plaintiff asserts that Defendant's treatment of him changed adversely. (*Id.* ¶ 27.) For instance, in several meetings organized by Stugart, Plaintiff was excluded while Belongia was invited (*Id.*). Additionally, during a Microsoft Teams discussion on May 14, 2024, Plaintiff professionally expressed frustration about Stugart interfering in technical matters due to her lack of experience with technology. (*Id.*)

2

Despite Motes agreeing with Plaintiff's comment, Motes labeled the comment as "repetitive misconduct" and escalated the matter to Human Resources. (*Id.*) The next day, Motes issued a "First and Last Letter of Warning" to Plaintiff. (*Id.*) On July 1, 2024, Defendant terminated Plaintiff's employment. (*Id.* ¶ 28.) After Plaintiff's termination, Defendant reassigned Plaintiff's job functions to Stugart and Belongia. (*Id.* ¶ 29.)

In May 2025, Plaintiff filed suit in this Court against Defendant, who later moved to dismiss Plaintiff's Section 1981 claims as well as his retaliation claims under Title VII and the PHRA for failure to state a claim. (ECF No. 9 at 1.) Shortly thereafter, Plaintiff filed the instant Complaint (ECF No. 11), leading Defendant on September 12, 2025 to move to dismiss on the same grounds as before (ECF No. 13). Plaintiff filed a response in opposition to Defendant's Motion (ECF No. 14) and Defendant filed a reply in support (ECF No. 15).

## II.     LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Assessing plausibility under *Twombly* requires three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (internal quotations and alterations omitted). Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court must accept as

true all "'well-pleaded factual allegations,'" draw all reasonable inferences from those allegations, and "'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations omitted). "If the well-pleaded facts do not nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co.*, No. CIV.A. 23-4445, 2024 U.S. Dist. LEXIS 38866, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

### III. DISCUSSION

#### a. 42 U.S.C. § 1981

Plaintiff asserts both national origin discrimination and retaliation claims under 42 U.S.C. § 1981 based on Defendant "stripping job duties from the only non-U.S.-born team members and reassigning them to less qualified U.S.-born employees." (ECF No. 11 ¶¶ 37, 42.) Defendant argues that Plaintiff has not sufficiently pled his claims under Section 1981 because the statute does not provide a cause of action for national origin discrimination, which the Complaint alleges as the sole basis for the statutory violation. (ECF No. 13-2 at 1.)

The Complaint identifies Plaintiff's national origin as Israeli and alleges that the adverse employment actions Plaintiff suffered "occurred under circumstances giving rise to an inference of discrimination, including that Dulitzki and Rawat (the only non-U.S. born team members) were the sole individuals targeted for duty reassignment to less qualified U.S.-born colleagues (Stugart and Belongia), who replaced them after termination; Motes' knowledge of Dulitzki's Israeli origin; and the pattern of favoring U.S.-born employees." (ECF No. 11 ¶ 38).

As set forth in Section 1981: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by

white citizens . . . ." 42 U.S.C. § 1981(a). To prove a violation of Section 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) discrimination occurred in relation to one or more activities enumerated therein. *Brown v. Phillip Morris*, 250 F.3d 789, 797 (3d Cir. 2011). "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid . . . 'racial' discrimination." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *see id.* at 613 (finding that § 1981 protects against discrimination based on "ancestry and ethnic characteristics").

A majority of district courts in the Third Circuit have dismissed Section 1981 claims that are based solely on national origin discrimination. *See, e.g., Reid v. Temple Univ. Hosp. Episcopal Campus*, 2017 U.S. Dist. LEXIS 183814, 2017 WL 5157620, at *7 (E.D. Pa. Nov. 7, 2017)*; Wesley v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 233 (D.N.J. 2014) (citing *Funayama v. Nichia Am. Corp.*, 2009 U.S. Dist. LEXIS 43765, 2009 WL 1437656, at *4 (E.D. Pa. May 20, 2009) (collecting cases)). At the same time, courts in this Circuit have permitted § 1981 claims based on national origin *and* race, ethnicity or ancestry to proceed. *Mulholland v. Classic Mgmt. Inc.*, 2010 U.S. Dist. LEXIS 59184, 2010 WL 2470834, at *2 (E.D. Pa. June 14, 2010); *see also Youssef v. Anvil Int'l*, 595 F. Supp. 2d 547, 558-59 (E.D. Pa. 2009). The Third Circuit has not yet decided this issue. *See Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 514 n.11 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987). It has noted, however, that a claim based solely on a plaintiff's national origin "would not be sufficient for a Section 1981 claim . . . ." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172 (3d Cir. 1991).

Because the Amended Complaint alleges Section 1981 claims *solely* on the basis that Plaintiff's birthplace is Israel—without any allegations that could be construed as pertaining to his

5

race, ethnic characteristics, or ancestry—these claims must be dismissed.[2] *Compare Mulholland*, 2010 WL 2470834, at *3-4 (dismissing § 1981 claim where plaintiff's allegations "expressly and exclusively refer[red] to 'national origin'" and her "being from Morocco") *with Manatt v. Bank of Am., NA.*, 339 F.3d 792, 798 (9th Cir. 2003) (stating that although plaintiff pled national origin discrimination under § 1981, she had raised a factual dispute as to race discrimination through alleging her coworkers mocked her "[e]ye shape [which] has nothing to do with national origin"). Denying the Complaint's claims on this basis is consistent with *Saint Francis College*, for there, the Supreme Court held the plaintiff could maintain his Section 1981 claim if he could prove "he was subjected to intentional discrimination based on the fact that he was born *an Arab*, rather than solely on" the fact that he was born *in Iraq*. 481 U.S. at 613 (emphasis added). As Justice Brennan's concurrence explained, "one's ancestry—the ethnic group from which an individual and his or her ancestors are descended—is not necessarily the same as one's national origin—the country where a person was *born*, or, more broadly, the country from which his or her ancestors *came*." *Id.* at 614 (Brennan, J., concurring) (internal citations and quotation marks omitted).

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's Section 1981 claims in Counts I and II.

  b. **Plaintiff's Retaliation Claim**

---

[2] While the Complaint mentions Plaintiff's "Israeli ethnicity" (ECF No. 11 ¶¶ 7, 22, 24, 35), "Israeli" is a nationality, not an ethnic group, as it denotes the country from which Plaintiff emigrated. Additionally, the Complaint twice mentions Plaintiff's "Middle Eastern descent" and "Middle Eastern . . . ethnicity," but neither is in reference to any discrimination or disparate treatment that Plaintiff experienced. (*Id.* at ¶¶ 7, 35.) *See Mulholland*, 2010 WL 2470834, at *6-7 (dismissing § 1981 claim where complaint referenced plaintiff's race but grounded "the allegations specific to the section 1981 claim[] . . . [i]n national origin, religion, and gender, to the exclusion of race or ethnicity").

Defendant also argues that Plaintiff's retaliation claims under Title VII and the PHRA in Count II fail because "Plaintiff does not allege any protected activity." (ECF No. 13-2 at 6.)

"The standard for retaliation is consistent between the two statutes, Title VII and PHRA." *Ogilvie v. Summa Glob. Educ.*, CIV.A. No. 23-4884, 2025 U.S. Dist. LEXIS 4809, 2025 WL 77076, at *2 (E.D. Pa. Jan. 10, 2025). "To make out a prima facie case of retaliation, a plaintiff must show that (1) 'she engaged in a protected activity,' (2) 'she suffered an adverse employment action,' and (3) 'there was a causal connection between the participation in the protected activity and the adverse action.'" *Id.* (quoting *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)). "Title VII defines a protected activity as an instance where an employee has opposed any practice made unlawful or has made a charge, testified, assisted, or participated in an investigation under Title VII." *Wadhwa v. Sec'y, Dep't of Veterans Affs.*, 505 F. App'x 209, 214 (3d Cir. 2012) (citing 42 U.S.C. § 2000e-3(a)). "Protected activity includes oral and written complaints and protests, whether formal or informal, to discriminatory practices prohibited by the statute." *Parker v. Phila. Newspapers, Inc.*, 322 F. Supp. 2d 624, 630 (E.D. Pa. 2004) (citing *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 287-88 (3d Cir. 2001)). A general complaint of unfair treatment is insufficient to establish protected activity; rather, a complaint must be specific enough to notify management of the particular type of discrimination at issue, at least through the context of the statement and to the overall "message being conveyed rather than the means of conveyance." *Gibbs v. Brennan*, No. 18-14410, 2021 U.S. Dist. LEXIS 156129, 2021 WL 3661277 at *14 (D.N.J. Aug. 18, 2021). Indeed, "[t]he Third Circuit has been clear that an employee has not engaged in protected opposition activity when he or she complains about unfair treatment, but stops short of referencing a protected characteristic as the basis of unfair treatment." *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D.

7

Pa. 2014) (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 134-35 (3d Cir. 2000)).

In the Complaint, Plaintiff alleges that he and Rawat "complained to Motes in a conversation about Motes stripping their job duties and reassigning those job duties to Stugart, who lacked the necessary experience and certification to perform those job duties." (ECF No. 11 ¶ 26.) He continues that, given that he and Rawat "were the only non-U.S.-born team members affected by the reassignments, and Motes' prior knowledge of their national origins, Motes understood or should have understood this joint complaint as opposition to discriminatory treatment based on national origin." (*Id.*) The Court does not view Plaintiff's conduct to constitute protected activity. First, as Defendant points out, "[n]otably absent is any assertion that Plaintiff mentioned his national origin—or any other protected trait—when he complained." (ECF No. 13-2 at 7.) *See Mikell v. Marriott Int'l, Inc.*, 789 F. Supp. 2d 607, 619 (E.D. Pa. 2011) (footnote, citation, and internal marks omitted) (finding neither of plaintiff's informal complaints constituted "protected activity for purposes of a prima facie case of retaliation under Title VII" because "there [was] no mention of the protected class in question"). Second, Plaintiff's argument that Motes "understood or should have understood" that Plaintiff's complaint was a report of discrimination is misplaced, for the touchstone of a retaliation claim is not the supervisor's subjective perception, but rather whether "the employee . . . h[e]ld an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII.'" *Wadhwa*, 505 F. App'x at 215 (quoting *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006)).

Absent a protected activity, Plaintiff cannot support his retaliation claims. Thus, the Court grants Defendant's motion to dismiss as to Count II.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted only as to Plaintiff's Section 1981 claims in Count I and is granted as to Count II in its entirety. Plaintiff's claims in Count I as to Title VII and the PHRA remain. An appropriate Order follows.

**BY THE COURT:**

**/s/ Kelley B. Hodge**
_____
**HODGE, KELLEY B., J.**